## High Court of Errors.

The INSURANCE COMPANY of NORTH AMERICA, *against* JONES and CLARK.

1807.

*Philadelphia,
Thursday,
July 30.*

Seamen's wages and provisions incurred during an embargo, cannot be recovered as a partial loss from the underwriter on freight. They are general average.

THIS was an action of covenant upon a policy of insurance, dated the 30th of *November* 1797, upon all kinds of lawful goods laden or to be laden on board the brig *Benjamin Franklin*, " at and from Bordeaux to a port in the *United States*," 3,000 dollars at six per cent. The policy was in the usual printed form, with the following memorandum written at the bottom. " This insurance is declared to be made " on the *freight* of the above brig, valued at the sum insured, " for two thirds thereof, which the assured warrants to be " *American* property, &c."

The vessel sailed from *Bordeaux* on the 20th of *November* 1797; but before she got out of the river, she was stopt by an embargo, laid on by the government of *France*, which lasted until the 9th of *January* 1798. The embargo being withdrawn, she renewed her voyage and arrived in safety at *Philadelphia*, where she delivered her cargo, and received the full freight stipulated by the shippers.

APPENDIX.
——·——
Ins. Co. of N.
America
v.
Jones
and
Clark.

An expense of 875 dollars 13 cents was incurred by the defendants in error during the embargo, for seamen's wages, provisions, and extra pilotage, to recover which, under this policy on freight, they brought the present action.

The cause was tried at bar, in the Supreme Court, at *December* term 1802, when the counsel for the company tendered the following bill of exceptions to the opinion of the court delivered in charge to the jury by Chief Justice Shippen.

" And now *to wit* &c. a jury being called, come *to wit* &c.
" who being duly impanelled, returned, tried, sworn, and af-
" firmed, the plaintiffs, to maintain the issue, gave in evidence
" the policy, protest, and ship's register, *prout* the same re-
" spectively, and exhibited an account of the disbursements
" during the embargo mentioned in the protest, *prout* the ac-
" count, all which evidence was admitted without exception
" on the part of the defendants. The plaintiffs admitted that
" after the embargo was taken off, as mentioned in the pro-
" test, the vessel proceeded in safety to *Philadelphia*, and
" there received the freight stipulated to be paid by the re-
" spective shippers of the cargo; but they contended that the
" expenses incurred during the embargo, were a direct con-
" sequence of the embargo, operating as a partial loss upon
" freight; that the same ought to be paid or reimbursed by
" the defendants in this action, so far as the interest of the
" plaintiffs: that the expenses of the embargo might either be
" estimated by the jury, upon a consideration of the time and
" the burthen of the vessel, or from the actual disbursement,
" which the counsel of the defendants agreed and admitted;
" and that the premium being for an insurance against the
" peril of an embargo, extended to a partial, as well as a total
" loss of the freight. But the defendants' counsel contended,
" that in point of law, the expenses incurred in consequence
" of the embargo ought not to be allowed to be recovered on
" a policy on the freight, as the vessel had returned to her
" port of delivery in safety, and had earned and received there
" her whole freight. And they contended that such an allow-
" ance would be contrary to an established and uniform usage
" among merchants and underwriters, which usage they en-
" deavoured to prove by evidence to the court and jury.
" Whereupon the court in their charge directed the jury,

APPENDIX.

Ins. Co. of N.
America
v.
Jones
and
Clark.

" that *unless such usage existed*, the expenses of the embargo
" *must be considered as a partial loss on the freight;* and that
" therefore, if an uniform commercial usage, such as was con-
" tended for by the defendants, which would enter into the
" essence of the contract, had been proved to the satisfaction
" of the jury, the verdict ought to be for the defendants, other-
" wise, *the verdict ought to be for the plaintiffs;* to which di-
" rection of the court, the counsel for the defendants excepted,
" and prayed the Chief Justice to set his seal &c., which he
" did, and the jury found for the plaintiffs 725 dollars 30
" cents with six cents costs."

The record being removed to this court, the cause was
twice argued, first at. *July Term* 1804, and again at the pre-
sent term.

*Tilghman* and *Ingersoll* for the plaintiffs in error. The on-
ly question directly before the court, is whether the expense
of seamen's wages and provisions, incurred during an em-
bargo, can be recovered from the underwriter on freight as a
partial loss. It may be material to consider another question,
whether they constitute general average.

1. That they do not fall exclusively upon the underwriter
on freight, is in the first place to be inferred from the novelty
of the action, when the same foundation for it must so often
have occurred. No precedent of the kind is to be found, and
that of itself is an argument of great weight. *Le Caux* v.
*Eden* (a), *Lord Montague* v. *Dudman* (b), *Litt. Sec.* 108.

The claim is also repugnant to the nature of the contract.
All that the plaintiffs in error insured, was that freight should
be received to the value of 3,000 dollars, and it has been re-
ceived. No peril whatever has occurred to prevent the owner
from obtaining every cent of the freight, according to the sti-
pulation of the shippers; and if the peril of an embargo throws
upon the insurer on freight the loss which the owner suffers
by the increased consumption of provisions and disburse-
ment for wages, so ought the peril of a *storm*, if by destroy-
ing a mast it leads to the same consequences. The thing in-
sured in neither case sustains injury; and it is only against

(a) *Doug.* 580.          (b) 2 *Ves.* 399.

APPENDIX.

INS. CO. OF N.
America
*v.*
JONES
and
CLARK.

injuries to the freight specifically, that the contract protects. It cannot be reconciled with any legal notion of a loss, that where the whole freight has been received, the assured shall still recover for a partial loss of it. The supposition proceeds upon a misconception of the nature of freight, which is not a changeable, variable thing, like profits, being more or less in an inverse ratio to the expense of earning it, but is a distinct ascertained object, which remains the same, although the expenses should sweep away all profit. It is part of the owner's duty to take the expense upon himself, and with it the chance of its being greater or less. He is bound to provide a sufficient ship, and to maintain her in a perfect condition during the whole course of the voyage. *Abbott on Ship.* 283, 4. The very existence of the insurer's promise that he shall earn freight, depends upon his performing this duty; and therefore however a peril insured against as to the freight, the thing insured, may increase the expense of this duty which he takes upon himself, it cannot affect the underwriter. The latter has not insured against perils and all losses arising from them, but only against hurt and damage to the freight, which cannot have suffered detriment, as the whole has been received.

There is no case which opposes this reasoning; but the contrary. In *Dacosta* v. *Newnham* (a), *Buller* J. says that the case of a vessel putting into port for the benefit of all, " is " not like the case where a ship is detained by embargo, where " the court have said that the expense (of seamen's wages " and provisions) shall fall on the owner, and the freight shall " bear it." In what case the court so said, cannot be ascertained. That they ever said the *policy* on freight shall bear it, cannot be shewn. If the meaning of *Buller* is, that the loss of both seamen's wages and *provisions* may be recovered upon the policy on freight, it is contrary to *Brough* v. *Whitmore* (b), where it was held that provisions are included in the policy on ship, under the term *furniture;* and certainly they cannot be included in both policies. His meaning must have been, that the owner lost the expenses in consequence of which he earned freight, and therefore that the freight was his indemnity. But whether or not, it is merely a *dictum.*

(a) 2 *D.* & *E.* 414.          (b) 4 *D.* & *E.* 210.

In *Robertson* v. *Ewer* (a) it was decided only that wages
and provisions during an embargo, cannot be recovered on
the policy on *ship;* not that they can be recovered on the
policy on freight. But the ground of the court's opinion is in
our favour; they look to the subject of insurance, and if that
is safe, there is no remedy under the policy.

The same point is all that was decided by *Buller* in *Eden and Court* v. *Pool,* mentioned in a note to the former case, and also in *Park* 54. Mr. *Park's* statement that Judge *Buller* held the freight to be liable, is contradicted by *East* in a note to *Sharp* v. *Gladstone* (b).

*Magens* says, that in a war between *England* and *Spain,* a fleet of merchant ships from *Carthagena* and *La Vera Cruz* were embargoed above a year at the *Havanna* by order of the *Spanish* court; and notwithstanding the expense of maintaining a ship's crew there ran very high, yet the owners of the ships had no recourse against *any* of their insurers; and he denies that it was even general average. 1 *Mag.* 68.

In *Thompson* v. *Rowcroft* (c), a case of the *Russian* embargo, where the ship owner, upon receiving a total loss upon freight, agreed to assign his right of recovery to the underwriters, and also made a similar agreement with the underwriters upon ship on receiving a total loss from them, and he afterwards received the freight, he was compelled to pay it all over to the underwriters on freight, without any deduction for seamen's wages and provisions during the embargo; because they were charges on the *owner* before the abandonment, and upon the underwriters on the ship afterwards. This is a decision that the underwriters on freight are not liable for such expenses.

In *M'Arthy* v. *Abel* (d), another case of the same embargo, the owner abandoned both ship and freight to the respective underwriters, and at the end of several months the ship arrived safe and earned her entire freight, which was paid to the underwriters on ship. The court held that the plaintiff could not recover upon the policy on freight; and lord *Ellenborough* in delivering judgment said, " if the fact

(a) 1 *D. & E.* 130.     (c) 4 *East* 34.
(b) 7 *East* 33.     (d) 5 *East* 388.

APPENDIX.

INS. Co. of N.
America
*v.*
JONES
and
CLARK.

" be merely.looked at, freight in the events which have hap-
" pened has not been lost, but has been fully earned and re-
" ceived by or on behalf of the plaintiff, the assured; and if
" so, no loss can be properly demandable against the under-
" writers on freight, *who merely insure against the loss of*
" *that particular subject by the assured.* But if it can be con-
" sidered as lost in any other manner or sense, it has been lost
" by the plaintiff's act in abandoning the ship." In this case
too there were expenses for seamen's wages and provisions
during the embargo, which were not recovered from the un-
derwriters.

And in *Sharp* v. *Gladstone* (a) where the present question
was expressly made, there is nothing from the court which
favours the exclusive claim upon the underwriters on freight,
but lord *Ellenborough* evidently inclines to the opinion that
the wages and provisions are at most but general average.

2. Are the wages and provisions general average? There
is certainly no adjudication that they are, although the opin-
ion of Mr. *Park* seems to be in favour of it. But unless the
owner is to bear them alone, they must be. All losses which
arise in consequence of extraordinary sacrifices or expenses.
incurred for the preservation of ship and cargo, come within
the description of general average. *Park* 170. Average, says
*Marshall*, is a contribution made by the owners of the ship,
freight, and goods on board, towards any particular loss or
expense incurred for the general safety of ship and cargo.
2 *Marsh.* 460. The definition of *Magens* is much the same.
1 *Mag.* 64. The expenses of wages and provisions after cap-
ture, have been held to be general average, upon the princi-
ple that it is for the general benefit that the crew should be
kept together, to navigate the ship in case of acquittal. *Lea-
venworth* v. *Delafield* (b). It is not easy to raise a distinction
as to this point, between capture and embargo. It is as much
for the interest of all in one case as in the other, that the
crew should be kept together; and it may be urged moreover,
that it is a part of the owner's duty, from his covenant in the
policy, to sue, labour, and travel, &c. to the expense of which
the underwriter binds himself to contribute. Against their
being general average there are, however respectable opin-

(a) 7 *East* 34.          (b) 1 *Caines* 573.

APPENDIX.

Ins. Co. of N.
America
v.
Jones
and
Clark.

tons, and it is immaterial to us in this case, as it is not an exclusive charge on the freight.

*Sergeant* and *Dallas* for the defendants in error argued, 1. That a loss had been occasioned to the subject matter of the insurance, which by the spirit and terms of the contract, they were entitled to recover as a partial loss of the freight. 2. That it was not of the nature of general average.

1. The objection to the novelty of the action has no weight as applied to a question of right, however it may be as to a question of form. The first instance of an action at common law by a ship owner against the owner of cargo, to recover a contribution to an average loss, is that of *Birkley* v. *Presgrave*, reported in 1 *East* 220., where this objection did not receive the least countenance. The law would be a strange science if it were decided on precedents only. On the contrary, it is the glory of the law, that while its principles are as immutable as the foundations of justice, its modes of relief are as various and as flexible, as the injuries of men, or the fluctuations of commerce can require them to be. Affirmative precedents may shew what the law is; the want of them can never shew what it is not.

The question in this, as well as in every other claim upon a policy, is whether the insured has been injured by one of the perils insured against, and to what extent. It is of no consequence what is the subject matter of insurance, whether ship, freight, or cargo; it must be governed as to the question of loss, by the same principles. The object in all insurances is the same. In the case of ship and goods, it is their arrival at the port of destination, without prejudice from any of the perils in the policy. Injuries to them are generally quite palpable, and therefore easily apprehended. In like manner the object of insuring freight, is to prevent prejudice to it from any of the perils enumerated, although from its abstract nature, the injuries it receives are not so striking, and therefore not so easily apprehended. The principles applicable to it, must therefore be the same as those which govern insurances on ship and goods, a due regard being had to the different nature of the subjects. It is like them exposed to partial as well as total loss, and like them may suffer a partial loss which is

APPENDIX.

INS. Co. of N.
America
*v.*
JONES
and
CLARK.

not attended by any actual subtraction from the thing itself. The objection then that we have received full freight, goes too far. It extends to every sort of insurance, and would exclude the owners of ship and cargo from recovering, where they had received the specific thing insured, however charged or burdened in consequence of perils, as by salvage, and general average. It is not the receipt of the specific thing which is insured; but it is its exemption from damage, diminution in value, or prejudice, by certain perils. Has then the subject of this insurance suffered injury? In what does the subject consist? In the earnings of the ship, computed at two thirds of a given sum, one third being deducted for wages and provisions of the voyage; or in other words in the profits of the ship in the voyage. The ordinary expenses of the ship, which generally are equal to one third, are a charge upon the gross freight, and the balance is the nett earning of the ship, which is insured. The spirit and meaning of the contract are that this nett earning shall be exempt from all deductions, and from all damage occasioned by the perils insured against; and although the thing be specifically received at the completion of the voyage, yet if it be received with the burden imposed by a peril in the policy, it is not exempt from deduction. As far as an abstract thing can suffer damage, it suffers it, as a part of the gross sum is consumed by a peril. The freight insured is the nett freight after making the usual deductions; the freight received is less, in consequence of the embargo; the policy is not a contract of indemnity unless it makes good the loss.

But the owner is said to take the expenses upon himself. That however is the case only in the course of the voyage. Delay by storms is at his risk. But an embargo while it lasts interrupts the voyage; and it is no part of his obligation to the insured, to sustain the expenses incurred during an interruption of the voyage, produced by a peril. This is the distinction taken by *Buller* in *Brough* v. *Whitmore* (a), to reconcile *Robertson* v. *Ewer* to the case then before the court.

It is moreover universally true that whatever will justify an abandonment, and entitle the insured to recover a total loss, will, if he does not choose to abandon, entitle him to re-

(a) 4 *D. & E.* 210.

APPENDIX.

Ins. Co. of N.
America
v.
Jones
and
Clark.

cover as a partial loss, any expenses or damage it may occasion. *Park* 78, 79, 80., 2 *Marsh.* 479, 483, 484., *Rotch* v. *Edie* (a). No doubt the defendants in error might have abandoned. The embargo was a peril which they were at liberty to consider as a total loss of the freight. Expenses, which were a direct consequence of the embargo, and which were payable out of the freight, must therefore be considered as a partial loss of it.

How. is the case affected by authorities? There is no case which says that the expenses are not a loss, for which the assured is entitled to an indemnity. In *Robertson* v. *Ewer* the opinions of all the judges shew, that although the policy on ship did not cover it, yet that the assured was entitled to recover it under the policy on that subject out of which seamen's wages and expenses were paid. In *Dacosta* v. *Newnham* it was the express opinion of Judge *Buller*, whose mere dictum would be a great authority; but he says it was so determined by the court. He cannot be understood to mean that the owner must bear the loss, for then his concluding words are absurd; it is the freight that is to bear it, and if so, the policy on freight. Nor does he contradict any decision in saying that it must bear both seamen's wages and *provisions;* for provisions consumed during an embargo are not covered by the policy on ship, as was held in *Robertson* v. *Ewer*. *Brough* v. *Whitmore* was a recovery for loss by fire in the course of the voyage. In *Eden* v. *Poole, Park* 54., the same opinion is repeated by *Buller*, that the freight is liable.

In the case from 1 *Mag.* 68. it does not appear that there was any insurance on freight.

In *Thompson* v. *Rowcroft* the decision turned altogether upon an agreement by the assured to assign his whole freight to the underwriter.

In *M'Arthy* v. *Abel* the whole question was the right of the plaintiff to recover a total loss after an abandonment of ship and freight, when the freight had been subsequently earned.

And in *Sharp* v. *Gladstone*, the question related to expenses incurred after an abandonment.

(a) 6 *D. & E.* 413..

APPENDIX.

INS. Co. of N.
America
v
JONES
and
CLARK.

2. The right of the assured to an indemnity drives the opposite counsel to an argument that the loss is general average; but this is against the sentiments of writers of high authority, and against express decision. The rule of the *Rhodian* law is, that " if goods are thrown overboard to lighten " a ship, the loss incurred for the sake of all, shall be made " good by the contribution of all." All the cases of general average are corollaries from this rule: *Park* 121, 122., *Abbott* 273., 2 *Marsh.* 460; and it must be constantly referred to, to understand them. The rule is founded both in equity and sound policy. Its equity consists in compelling all to bear part in a loss voluntarily incurred by one for the general benefit; its policy in the inducement it offers to consent to the sacrifice. Where there is neither equity nor policy in requiring a contribution, there is no foundation for applying the rule. If the motive is to save all from an impending peril, then the loss is general average; not else. Intention, determination to produce the effect by the sacrifice, is therefore essential, whether formal consultation be so or not; and the peril must not already have happened, or the intention cannot exist. Here the owner of the freight did not act voluntarily; he merely submitted to what he could not resist, as his contract with the seamen was in full force. There was no impending peril, for the whole danger had actually happened. The payment of wages could not by possibility diminish the danger, which consisted in detention only; and therefore there was no intention to diminish the danger. Such a case does not come within the rule of general average. It is accordingly so held by *Buller* in *Dacosta* v. *Newnham*, by *Abbott*, 222., by *Magens*, 1 vol. 68., and so it was decided by the Supreme Court of *New-York* in *Penny* v. *New-York Insurance Company* (a). Expenses incurred for the general benefit after a capture, do not present an analogous case. They however are not properly speaking an average at all. By the capture the charter-party is dissolved, the relation of the parties and their consequent obligations are destroyed, and of course the ship owner is no longer bound to retain and support the crew. What is done by one of them for the general benefit, before advice, does not stand upon

(a) 3 *Caines* 155.

the footing of the marine law of average, but upon that of services rendered, for which the law implies a promise to compensate, or upon the footing of the special clause in the policy.

APPENDIX.
———————
INS. Co. of N.
America
v.
JONES
and
CLARK.

TILGHMAN C. J. delivered the court's opinion.

It appears by the bill of exceptions in this case, that the question is simply this: are the expenses and disbursements for seamen's wages, provisions, &c. during the time the defendants' ship was detained by an embargo at *Bordeaux*, to be considered as a partial loss, for which the underwriters on the freight are liable?

It is contended by the counsel for the plaintiffs in error, that these expenses fall upon the owners of the ship, and are not covered by the policy; but that at all events, if the underwriters are in any manner liable, the loss must be considered of the nature of general average. Although one would suppose the case must frequently have occurred, yet we find no precedent of any such action as the present, nor any decision directly in point, either in *England* or in this state. There is a difficulty attending subjects of this kind, arising from the abstract nature of freight; and from this circumstance, that although the freight is earned by the ship, and both ship and freight generally belong to the same person, yet they are allowed to be the subjects of different insurances. In *France* and some other countries, insurances on *freight* are not permitted. A ship is an object of the senses. Every one understands in what manner it may suffer damage. But when we speak of a damage sustained by *freight*, we may easily be led to misconceptions. What is an insurance on freight? It is an engagement, say the insurers, that the ship shall complete her voyage, and earn the freight, and the freight being earned, the engagement is fulfilled. On the other hand, the assured contend, that although the whole freight has in fact been earned, yet it has been subject to considerable expenses, occasioned by one of the perils insured against, and that by the true construction of the policy, the insurers are bound to make good the whole freight clear of these expenses. It is certain that an embargo is a peril insured against, and that extraordinary expenses were occasioned by it. But it does not

APPENDIX.

INS. Co. of N.
America
v.
JONES
and
CLARK.

follow of course, that these expenses are all chargeable to the freight, although they may have been paid by the owners of the ship, who are entitled to receive the freight. The ship being restrained by the embargo, it was for the interest of all persons concerned in ship, freight and cargo, that the crew should be retained for the purpose of taking care of every thing; and in this point of view, the extraordinary expenses might in equity be apportioned among the several persons, who derived benefit from them. As to the loss by consumption of *provisions*, it seems by no means clear that it is applicable entirely to the *freight*, because provisions are appurtenant to the ship, and where there is an insurance on the ship and *her furniture*, it has been determined, that the stock of provisions laid in for the voyage, is covered, and in case of loss, may be recovered on such insurance.

The *assured* rely on the opinion of respectable judges, that the loss falls exclusively on the freight. Those opinions it will be necessary to consider.

In the case of *Robertson* v. *Ewer*, 1 *D. & E.* 127., it was decided, that on a policy on a *ship*, the insured could not recover expenses for seamen's wages and provisions, during an embargo; and this was the only point decided. Nothing is said about freight.

The same point precisely was determined by Judge *Buller* in *Eden and Court* v. *Poole*, 1 *D. & E.* 132., *note;* and although it is said by *Park* 153., that *Buller* declared the *freight* and not the ship was liable for the loss, yet it is evident that if he did say so, it was an extrajudicial opinion, for no such point was before him. There is reason to suppose however that that learned judge did not express himself in the manner mentioned by *Park;* for Mr. *East* in a note to the case of *Sharp* v. *Gladstone*, 7 *East* 33.; says that on examining his own manuscript note of *Eden* v. *Poole*, he finds it only stated that Judge *Buller* was of opinion that those charges were not allowable on *such a policy* on a *ship*, and that he gave no opinion as to the exclusive liability of the freight.

In the case of *Dacosta* v. *Newnham*, 2 *D. & E.* 414., Judge *Buller* is reported to have said, " this is not like the " case of a ship detained by an embargo, where the *court*

APPENDIX.

Ins. Co. of N.
America
v.
Jones
and
Clark.

' *have said* the expenses shall fall on the *owner only*, and " the *freight* must bear it." But in what case the court so said we are not informed; certainly we can find no case where they so *determined*. These are the principal English authorities relied on by the defendants in error. They are no more than the *sayings* of judges, certainly very respectable; but these sayings are often mistaken and misrepresented, and even when truly reported, must not be put in competition with solemn judgments. We see that in neither of the above cases did the question come *immediately* before the court, how far the insurers on freight were answerable for losses of this kind. But that question has been brought more immediately in view *lately*, and *since* the decision of this cause in the Supreme Court.

In the case of *M'Carthy* v. *Abel*, 5 *East* 388, 397., the assured abandoned both ship and freight to the different underwriters, on receiving information of an *embargo*. The ship afterwards performed her voyage and earned the entire freight. The assured sued for a total loss, and it was adjudged against him, because in the event which happened, the freight was not lost, but fully earned and received by or on his behalf.

In the case of *Sharp* v. *Gladstone* too, 7 *East* 34., where the subject of freight was before the court, it did not seem to be their opinion, from what fell from them, that freight should be exclusively liable to losses of this kind.

We do not find then any express authority that this loss can be recovered in any shape. That it cannot be recovered from the insurers on the freight *exclusively*, may be strongly inferred from the nature of the contract, which engages that the freight shall not be lost, and in fact no part of it has been lost. *Park*, one of the most accurate writers on insurance, seems to have no idea that the freight *alone* is *liable*, but states it as a question *undecided*, " whether the extraordinary wages " and victuals expended during an embargo, ought to be " brought into a *general average*, so as to charge the under- " writer." He supposes that lord *Mansfield* inclined to the opinion that they might, and gives his reason for such supposition. The *criterion* of general average is, were the expenses *necessarily* and unavoidably incurred for the *general safety*

APPENDIX.

INS. CO. OF N.
America
v.
JONES
and
CLARK.

of the ship and cargo? Although the decision of this point is not absolutely necessary at present, yet as it may be useful to settle it by the highest judicial authority in the state, it has been thought proper to have it declared as the opinion of a majority of this court, that the expenses incurred during the embargo at *Bordeaux*, should be brought into a general average.

Upon the whole, it is the opinion of a majority of this court, that the judgment of the Supreme Court be reversed.

RUSH, *President*. A general question, interesting to commerce, important in its principles, and heretofore universally confessed to be an undecided point, is brought before this court by writ of error; and we are called upon to determine whether an insurer on the *freight* who underwrites a *particular* sum, which has been received by the insured, is *exclusively* obliged to pay the expense of provisions and mariners' wages arising from an embargo.

The material facts are these: The Insurance Company of North America insured 3000 dollars freight on the brig *Benjamin Franklin*, on a voyage from *Philadelphia* to *Bordeaux* and back, and have covenanted in the policy against the usual perils " by arrests, restraints, and detainments of all kings, " princes, and people, of what nation, condition, or quality, " soever." The ship and cargo were also insured against the same perils. While the ship lay at *Bordeaux*, she was detained by an embargo; and the expense of such arrest and detention has been estimated at 875 dollars and 13 cents. As soon as the embargo was taken off, the ship proceeded on her voyage, and having arrived safely in *Philadelphia*, the 3000 dollars freight were received by the insured. It is not alleged, that the ship, cargo, or freight, sustained any other loss but what arose from the embargo, in wages and provisions.

Upon the trial of the cause the court below were of opinion and so charged the jury, that the expenses of the embargo, were a *partial* loss on the freight, that is, they were *not* an average loss; in consequence of which the jury gave a verdict for the insured for 725 dollars and 30 cents. To this opinion the insurance company tendered by their counsel a

bill of exceptions, and have brought their writ of error from the Supreme Court.

The question is not whether the insured shall recover the expenses of the embargo? That in my opinion is certain. But the question is, *who* shall pay them? Is the insurer in the present case solely bound to pay them, according to law and a fair construction of the policy? I will inquire,

1st, Does an insurance on the *ship* cover the expenses of an embargo?

2d, Is an insurer on the *cargo* liable for such expenses?

3d, Can an action be supported for such expenses against an insurer who underwrites a precise or fixed sum on the freight, which has been received?

4th, If the insurers on the *ship*, *cargo* and *freight* be not in the present case separately liable for the expenses of the embargo, are they jointly answerable on the ground of *general average?*

Is the insurer on the *ship* liable for the expenses of an embargo?

That he is not liable is evident from the nature of the contract, and express adjudications on the subject.

A policy is a contract in writing, by which the insurer, for a reasonable compensation, engages that certain property of the insured, specified in the policy, shall sustain no loss or damage from any of the perils enumerated in the contract between the parties.

To found a claim upon the policy, the insured must prove, that the identical property *specified* has been destroyed or lessened in value by some of the perils mentioned in the policy. When the property insured arrives safe without damage from any of the perils stated in the policy, the insurer has complied with the contract, and law and justice can demand nothing more of him. The insuring party can never be called upon to answer for a breach of contract, where no breach of contract has taken place. To make the insurer on the *ship* liable, there must not only be peril to the ship, but she must receive loss or damage *from* the embargo. When there is no actual loss to the ship occasioned by the embargo, it is the same thing as if she had arrived safe after the perils of a storm, enemies, or pirates; in which cases, there is no

APPENDIX.

INS. Co. of N.
America
*v.*
JONES
and
CLARK.

pretence to say the insurer is liable, if the ship receives no damage. The peril of a *storm* and the peril of an *embargo* are the same thing to the insurer of the ship, after she has returned in safety to her port.

In conformity to these remarks, and with a spirit of perfect justice and propriety, it has been decided on several occasions, and particularly in *Robertson* v. *Ewer*, 1 *Term* 127, that the insurer on the *body of the ship* is not liable for provisions and sailors' wages, during an embargo. In this case Justice *Buller* says, the court look only to the *thing itself*, which is the *subject* of the insurance, and that when the ship was insured, the wages and provisions were no part of the thing insured. Upon this principle of restricting an insurance to the article or object insured, it has also been decided, that sailors' wages and provisions, expended while a ship is refitting, cannot be recovered against the insurer of the ship. *Fletcher and others* v. *Poole. Park 52, 53.*

As to the second point: is the insurer of the *cargo* liable for such expenses?

There cannot be the slightest foundation for the position. Attempts it is true have been frequently made to extend the insurance of a ship to wages and provisions during an embargo; but nobody ever ventured to charge those expenses on the insurer of the cargo. As long as the terms of a contract and the intention of the parties shall have any weight in courts of justice, the idea will be reprobated. It is not easy to conceive an instance of grosser injustice than to make the insurer of specific property liable for *consequential* injury to *other* property, and more especially when the property insured has received no damage from any of the perils stated in the policy.

With respect to the third point. Can an action be supported against the insurer of the freight in the cause now before the court, for the expenses of provisions and sailors' wages during an embargo?

What is the nature of the insurance on freight in the present instance? It is an engagement that the insured shall receive 3000 dollars freight for the transportation of goods, wares, and merchandise on board the brig *Benjamin Franklin.* The ship has arrived safe, and the insurers have receiv-

APPENDIX.

Ins Co. of N.
America
v.
Jones
and
Clark.

ed the sum stipulated. Under these circumstances it would be a violation of every sound principle of law and justice to maintain an action for the breach of a contract, which has been complied with literally and to the fullest extent.

To render an insurer liable, it is equally the dictate of law and common sense that the loss should happen to the *property* or *interest* specifically insured. But who I ask, will hazard the assertion, that the insured have sustained a loss on the freight insured, when they have received the *whole* sum insured agreeably to their contract with the insurers?

An insurance on freight to a *precise* amount, is a contract that the insured shall receive the sum mentioned for the conveyance of merchandise, without any loss or diminution arising from an embargo. When there is an insurance of this kind, and the embargo is the means of preventing *any part* of the cargo from being put on board, or in any other mode diminishes the freight, this will be a *direct* loss on the freight, arising from the embargo; and the insurer would of course be responsible for a partial loss on the freight.

There is no foundation for the position that the only peril from the embargo was to the freight. It would be more correct to say, the only peril to the freight arose from the peril to the ship and cargo; or any injury to them might create a loss on the freight. Even if it were true the freight *only* was in peril, yet the insurer thereon is not liable, unless it shall appear the embargo in some way produced a loss on the freight; in which case he would be liable only for *such* deficiency.

The reasoning of Justice *Buller* in *Robertson* v. *Ewer*, that the court look only to the thing insured and inquire if that be safe, applies with unanswerable force to prove that the insurer of the freight is not liable in this case any more than the insurer of the ship. If the insurer of the ship be not responsible for the expenses of an embargo because she arrives safe, unquestionably the insurer on the freight cannot be responsible for such expenses where the freight has been received, or in other words, is safe. In both cases the contract is equally complied with by the insurers.

It appears, therefore, upon the true construction of the policy, that neither the insurer of the ship, or of the cargo,

APPENDIX.

INS. CO. OF N.
America
*v.*
JONES
and
CLARK.

or of the freight to a certain amount, is liable by virtue of his contract to pay the expenses of an embargo.

But though not any one of the insurers be separately liable under an express contract for the expenses of an embargo, yet upon every principle of equity, and by operation of law, they are all bound to contribute their several proportions as gross or average loss, which is the

4th point. It is an acknowledged principle of distributive justice, that all persons who risk their property at sea, shall make compensation to any one of them who is obliged to sustain a certain loss for the common or general benefit. For this purpose it is understood they all enter into a *tacit* obligation; nothing of which is expressed in the policy. Natural justice however and the obligations of common honesty require it at their hands. In case their respective interests are insured, the insurers must make good the loss in such proportions as they have underwritten; and in *Dacosta* v. *Newnham*, 2 *Term* 407., it is admitted, and very properly, that *freight* as well as *ship* and *cargo* shall contribute to a general average.

But the question occurs, is the expense arising from an embargo to be brought into general average? Does the law throw these expenses as the result of unavoidable necessity on the insurer of ship, cargo and freight? *Park* in his treatise on insurance seems to be clearly of opinion they are general average; and that both Lord *Mansfield* and Justice *Buller* were of the same opinion. Be this as it may, we find an average loss described to be, where the expenses are *deliberately* and *unavoidably* incurred with a view to the general safety of ship and cargo. *Park* 123, 125.

What is an embargo? It is the detention of a ship by public authority for national purposes, and continued any length of time that the real or imaginary *interests* of the country may require. Let me ask then whether the master and crew could possibly avoid a situation of this kind, any more than they could avoid a fleet of pirates, or the overwhelming fury of a storm? In the latter case the loss is produced by the elements, in the former it is the effect of human violence; but in both it is equally inevitable. Whether the loss be occasioned by a physical or moral necessity, all who are bene-

fitted by it are bound in justice to contribute to the aid of the principal sufferer.

To make the loss gross average, it is said the expenses must be deliberately incurred. We shall not enter into a dispute about words. It is properly observed by Lord *Kenyon*, that the rule of consulting the crew is founded more in prudence than in necessity; and that the danger is often too great to admit of deliberation. 1 *East* 228. To which may be added, not only the danger is often too great to consult the crew, but the nature of the transaction may afford decisive evidence of the inutility and folly of doing it. In the case of an embargo the thing speaks for itself; and nothing would be more truly ridiculous than a formal consultation whether they should resist the whole power of a nation or country. The nature of the force applied in the case of an embargo admits of deliberation no more than the *danger* from a number of pirates with a bloody flag would admit of it. Where there is sufficient evidence that the loss was *unavoidably* incurred for the general benefit, the deliberation of the thing is a matter of no consequence.

The law to some purposes considers an embargo both as a peril and a loss, as much so as it does a storm attended with the most fatal effects; and it is for this reason the assured may abandon in the case of an embargo. When an embargo happens, it is the same thing as if a storm happens with damage, both as to the right of abandonment and the expense incurred in saving the ship and cargo.

In the case of a capture it is admitted, the charges of reclaiming the vessel, with the wages and expenses of the ship's company, shall be brought into general average. *Park* 124, 5.

The embargo like the capture is accompanied with superior force; and in both cases the expenses are equally necessary to preserve the ship and cargo. An embargo is an arrest, a capture for *special* purposes; and while it continues, may be called a capture during the pleasure of the government that causes it. The expenses requisite to save her from destruction, whether she be under the gripe of national force or individual rapacity, appear to be equally unavoidable, and must be borne by all who have an interest in the preservation of the property.

APPENDIX.

INS. Co. of N. America *v.* JONES and CLARK.

APPENDIX.

INS. Co. of N.
America
v.
JONES
and
CLARK.

The case of *Brinkley and others* v. *Presgrave*, 1 *East* 220., in point of principle is very much the same with that now before the court. It was an action by the owner of the ship against the owner of the cargo, to recover for an average loss on a quantity of wheat the property of the defendant, damaged in the harbour of *Sunderland* on board the ship *Argo*, owned by the plaintiffs. It appeared that the ship in entering the harbour was exposed to a storm, which made it necessary in order to save her, to cut and destroy the cables and other parts of the tackle, and to hire a number of workmen at an extravagant rate to work at the pumps. To recover an average loss of all these expenses, the action was brought and succeeded. In deciding the cause, the court observe that all those articles made use of by the master and crew upon the emergency and out of the usual course, and other expenses incurred, must be paid proportionably as general average. Upon the argument, the counsel for the defendant urged that the captain had not consulted the crew. But the court treated the idea with deserved neglect, it appearing that what he did was for the benefit and interest of all concerned.

In *Dacosta* v. *Newnham* the same principle is admitted and recognised, 2 *Term* 407., that where a ship is *obliged* to put into port for the benefit of the *whole concern*, the charges of loading and unloading the cargo and taking care of it are general average. Whether a ship be obliged to put into port for the benefit of those concerned, or whether she be obliged to stay in port for their benefit, the principle of necessity is the same. In one case indeed it is a physical necessity, in the other a moral necessity, but both are equally imperious.

Upon this point I shall only add, that the average loss is consonant to the very nature and essence of insurance, which is intended to divide the misfortunes of commerce among several, rather than throw them upon a single person. It seems repugnant to the feelings of justice and to the spirit of the contract, to render an insurer on freight exclusively liable to pay the expenses of the embargo, while others are equally benefitted by these expenses. The determination is oppressive, and injurious to commerce.

It may be remarked, that in giving my opinion I have uniformly stated the question in very particular terms, and

APPENDIX.

Ins. Co. of N.
America
v.
Jones
and
Clark.

that I have considered it under all the peculiar circumstances attending the case. My reasons for this I shall now mention.

I approve the position advanced by Mr. *Moylan* on the former argument of this cause, that to render an insurer on freight liable for the expenses of an embargo, on any other ground than general average, a special contract, or some memorandum at the foot of the policy, is absolutely necessary. It should seem from the expressions of lord *Mansfield*, that an insurance on the *voyage* or *on the crew* is a special contract of this nature. In the casë of *Robertson* v. *Ewer* he says, " on a policy on a *ship*, sailors' *wages and provisions* " are never allowed in settling the damages. The insurance " is on the *body of the ship, not on the voyage or crew.*" An insurance on *the voyage* it should seem purports to be a contract that the voyage shall sustain no loss from any of the perils in the policy; in which case the voyage is made the direct object of the insurance, and will cover the expenses of the embargo, because the embargo occasions an injury and loss on the voyage. A policy that the insured shall sustain no loss on account of the crew from any of the usual perils, would no doubt be a direct insurance against the expense of sailors' wages and provisions arising from an embargo. A general insurance on the freight would also be such a contract as to subject the insurer exclusively to the expense of an embargo. Where the *freight* of a vessel is insured in *general* terms, it is an express engagement she shall earn her full freight without loss from an embargo; and will be equivalent to an insurance on the *voyage*, or the *profits* of the voyage. The insurer in these cases stands in the place of the owner, and when Judge *Buller* says, " the expenses of an " embargo must fall upon the owner only, and the *freight* shall " bear it," he means that where the owner had insured his ship and nothing more, himself as the owner, or the freight, which is the same thing, must bear the expense arising from an embargo.

There is an evident distinction between a general and indefinite insurance of freight, and insurance of a precise sum on the freight. If this had been an insurance of the whole freight, *eo nomine*, it would cover all the expenses of the em-

APPENDIX.

Ins. Co. of N.
America
*v.*
JONES
and
CLARK.

bargo. But insuring a fixed sum on the freight is the same thing as an insurance of a fixed sum on the cargo; and there is no just reason why the expenses of an embargo should be a partial loss on freight received, any more than they should be a partial loss on goods delivered.

I have given my opinion that this is a case of general average. If it be not, the plaintiff is totally without remedy. He can never be indemnified for the expenses of the embargo by virtue of any contract expressed in the policy. The underwriters on the ship, cargo and freight, have complied with their engagements, agreeably to the terms and meaning of their respective assumptions. The ship has returned in safety to her port, the cargo has been delivered without damage, and every farthing of the freight has been paid to the owner, which the underwriter stipulated he should receive.

I shall conclude with the remark, that I have felt much satisfaction on discovering that cases have occurred in *Westminster Hall*, since forming my opinion on this subject, in which the Chief Justice of *England* has added the weight of his judicial authority to the two leading points I have endeavoured to establish. In the case of *M'Arthy and others* v. *Abel*, reported in *5 East* 388., the defendant underwrote 200*l.* on the freight. The ship also was insured by some other person. The vessel being detained by the *Russian* government, the assured abandoned both vessel and freight to the respective insurers. The embargo being taken off, the ship arrived at *Plymouth*, and earned freight to the amount of 2242*l.* 6*s.* 10*d.*, and notwithstanding these circumstances the assured sued the underwriter on the freight. The court gave judgment in favour of him, and in delivering the opinion, lord *Ellenborough* reasons in the following manner: " If the " fact, says he, be merely looked at, freight, in the events " which have happened, has not been lost, but has been fully " and entirely earned and received by the plaintiffs, the assur- " ed; and if so, no loss can be properly demandable against " the underwriter on the freight, who merely insures against " the loss of that particular subject by the assured. But if " the freight can be considered lost to the owner of the ship " in any other sense or manner, it was not by means of the

" perils insured against, but by means of the abandonment " of the ship, which abandonment was the act of the assured " themselves, with which and its consequences the under- " writer on the freight has no concern." " Therefore," continues lord *Ellenborough,* " it appears to us, *quacunque via* " *data,* that is, whether there has been no loss at all on the " freight, or being such, it has been a loss occasioned entirely " by the act of the plaintiffs themselves, they are not entitled " to recover," and they were accordingly nonsuited. I cite this case to prove the present action cannot be maintained.

The case of *Sharp* v. *Gladstone,* in 7 *East* 33, 34., shews that in the opinion of lord *Ellenborough* the expenses of an embargo are a ground of general average.

For these reasons I think the judgment of the Supreme Court is erroneous, and should be reversed.

YOUNG, *President.* Having the misfortune to dissent from the judgment of my respectable colleagues, it may be proper to°state the grounds of my opinion. My remote situation and general course of study do not well qualify me for deciding in cases of this kind. But as the parties have a right to my opinion, it is my duty to give that which I believe to be most consonant with law and justice.

In the expounding of contracts, the meaning and intention of the parties is to be ascertained according to the subject matter. In mercantile transactions of a general nature, founded on the common usage of civilized countries, a regard ought to be had to the substance and spirit of the contract; and I consider it to be a sound rule, that where one of the parties has received an adequate consideration for his engagement which is somewhat dubious in its terms, it ought to be liberally construed, and not in such a manner as tends to disappoint the just and reasonable expectation of the party in whose behalf the promise was made.

In the first place, it may be observed that so far as respects mercantile usage, upon which the plaintiffs in error attempted to support an exoneration from the claim of the insured, it was negatived by the jury. If such a usage had been established in *Pennsylvania,* it is natural to suppose particular instances of it might have been shewn. In that case there would have been no question on principles or the practice

APPENDIX.

INS. CO. OF N.
America
*v.*
JONES
and
CLARK.

of other states. The usage in this would have been considered as known by both parties, and to have formed a part of their contract. If the negativing of the usage after an endeavour to support it by testimony be not evidence of the contrary, I consider the verdict as entitled to weight, unless it can be shewn by some adjudications that the jury have been mistaken.

The counsel for the company have in the first place relied upon an observation of Mr. *Park* in his compilation, that it was a general opinion, that the extraordinary wages and victuals expended during the detention of a vessel by a foreign prince not at war, *ought* to be brought into general average. He adds that this matter, alluding to the period of his writing, had never been expressly determined. A court of law however cannot be too cautious in adopting opinions which must be more or less general, according to the views and interests of particular persons. We ought to see whether they are supported by just principles, have been sanctioned in practice, or established by legal authority. *Opinionum commenta delet dies, naturæ judicia confirmat.*

The argument relied on for the company is that the insured having upon the determination of the voyage received their *full* freight, the insurers have satisfied the terms of their contract. The position however proves too much. In that point of view the loss which the insured have sustained from the detention of their ship would not be general average, for the company would be excepted from contribution, upon the plea that it had satisfied the terms of its engagement, while in reality it satisfied nothing. Supposing the detention to have been so long as to have swallowed the whole freight, the insurers of it on this ground would still escape contribution. If the owner of the ship, the several shippers of the cargo or their respective insurers, were called upon to indemnify the loss of freight, might not they with equal reason say, " We " have satisfied the terms of our contract. The ship and " goods have arrived at the port of discharge, and we are " bound only for the ordinary expenses of the voyage. By " not abandoning when those concerned might have done it, " our contract was not intended to cover those extra ex- " penses." The very detention might have occasioned a

rise in the market of the goods shipped, instead of occasioning a loss to the freighters. The interests of the owners of ship, goods and freight, are frequently altogether distinct and separate. It is otherwise when there is a common end, a joint profit and advantage; as in the case of a copartnership, where the maxim applies, *qui sentit commodum, sentire debet et onus.* It has the appearance of a quibble to tell the owner of freight, perhaps the charterer for a particular voyage, who has been necessarily put to expenses for the purpose of securing it, " You have lost nothing. It is true indeed you " paid us for insuring that your freight should neither be en- " tirely lost or materially diminished. But we meant only to " secure the solvency of the shippers of the cargo, and they " have paid you." I am unable to discover this to have been the intention of the parties. The lien upon the goods is generally ample security. If worth the freight, the owners or their insurers must pay it. The question here is, have the insured sustained a loss under one of the risks assured against? There is no doubt but that an embargo is one of those risks. It may defeat the main end of a voyage, and occasion a very great loss. But it is contended that the owners in this case did not sustain the loss as owners of the freight. But it is clear to my mind that their primary object was freight. The ship was in fact what is termed a seeking ship, and was only the medium for acquiring freight. The mariners were only subservient to this main object. The freight became thus the true fund for defraying not only the ordinary charges which fall under the head of ship and furniture, but of those extraordinary expenses which are the result of an embargo. It would seem therefore natural and reasonable for this fund to bear them, and consequently the insurers of it. It has been intimated that these expenses occasioned only a partial loss, and there is no instance of a recovery for such a loss. On the principle that the whole includes every part, it will not be easy to distinguish between a total and a partial loss. It has not been contended that the exertions and the expenses incurred by the insured were not for the benefit of the insurers, the present plaintiffs in error. The ship herself and the goods aboard were apparently safe. The owners of both found it more convenient to wait than abandon, if they had insured,

APPENDIX.

INS. Co. of N.
America
v.
JONES
and
CLARK.

which does not appear from the case before us. If there was in fact no insurance of ship and cargo, those expenses were exclusively for the benefit of the freight, unless it can be clearly shewn they form a subject for general average, and that the several and distinct owners of ship, cargo and freight, are all responsible *pro rata*. This might often occasion a great uncertainty and confusion; and unless I can see sound principle or settled law for extending general average so far, I must consider it special, and applicable to the freight. In *England* the point appears to have been long ago so determined at *nisi prius*, and acquiesced in there and by the neighbouring commercial state of *New York*. It appears recognised in several cases under the *Russian* embargo, which by a species of courtesy obtained that name, although an act of hostility on its commencement.

*M'Arthy et al.* v. *Abel*, 5 *East* 388., was the case of an abandonment of both ship and freight by the owners, who had chartered their vessel for a particular voyage, to certain persons. There it was held, under the particular circumstances stated in the report, that the assured could not recover as for a *total* loss of the freight, the freight having been in part earned: or, as the margin reads, supposing the freight to have been in any other sense lost to the assured by the abandonment of the ship to the insurers thereon, it was so lost not by any peril insured against, but by the voluntary abandonment. It appears from the case that one of the owners, the insured, received 500*l.* from the freighters to pay the seamen's wages, &c., and that the freight was considered the fund for those wages, to which they were entitled though confined and rendered unable to earn them. The assured could not therefore recover as for a total loss, and as to a partial loss there was an abandonment of both ship and freight. It must be acknowledged however, there is some obscurity in the expressions attributed to lord *Ellenborough*. If the reporter be accurate, it can only be said " *aliquando bonus dormitat*." It would seem as if that able judge had considered the abandonment, with the actual receipt of part of the freight, as acts inconsistent with each other, and the plaintiffs concluded by their own conduct. But this is explained by the subsequent case of *Sharp* v. *Gladstone*, 7 *East* 24. There the several under-

writers who had separately paid as for a total loss of ship and freight, were held as coming into the place of the assured. It was in fact an adjustment of loss of ship and freight, and the object was to apportion the losses among the several underwriters, according to the subjects insured. Each set of underwriters were to be entitled to their respective salvage, subject to the deductions applicable to each. Certain items were entirely struck out, others to be apportioned according to the respective interests of the two sets of underwriters; and on this subject he lays it down, that the very charges of putting the cargo on board was for the benefit of the underwriters on the freight. This carries an extension of special average arising from embargo farther than mere seamen's wages and ordinary disbursements; so far is lord *Ellenborough* from calling in question the authority of the several cases, then cited to shew that the expenses of an embargo belonged to the underwriters on freight. Judge *Livingston*, now of the Supreme Court of the *United States*, acknowledged to be well versed in the knowledge of commercial law, appears to have entertained the same opinion, as well as the learned bench of the Supreme Court of *New York*, and that of our own. I would therefore be for affirming the judgment.